600 A.2d 506
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOSE SILVA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1991—Decided December 31, 1991.

Before Judges R.S. COHEN, ASHBEY and A.M. STEIN.

*Timothy A. Shafer* argued the cause for appellant (*Wilfredo Caraballo*, Public Defender, attorney, *Bruce A. Levy*, Designated Counsel, of counsel and on the brief).

*Tanya Y. Justice*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, attorney, *Tanya Y. Justice* of counsel and on the brief).

The opinion of the court was delivered by

R.S. COHEN, J.A.D.

Defendant Jose Silva was indicted on two counts charging armed robbery, two counts of possession of a weapon with intent to use it unlawfully, and one count of possession of a weapon without a permit. The trial judge dismissed the last count, and the jury found defendant guilty on the other four. Defendant was sentenced for the armed robberies to concurrent custodial terms of fifteen years, with seven-year mandatory minimums, and for the weapons possession counts to two seven-year custodial terms with three-year mandatory minimums, concurrent with each other and with the armed robbery sentences.

On his appeal, defendant makes the following arguments:

I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO CHALLENGE DEFENDANT'S ALIBI WITNESS ON THE BASIS OF PRETRIAL SILENCE.

A. The Court Erred in Permitting the State to Infer Recent Fabrication Based on the Alibi Witness's Pretrial Silence.

B. The Trial Court Erred in Failing to Instruct the Jury that the Defendant's Alibi Witness Had No Duty or Obligations to Come Forward With Exculpatory Information (Not Raised Below).

II. DETECTIVE JENKINS' TESTIMONY DENIED THE DEFENDANT A FAIR TRIAL.

A. The Trial Court Erred in Permitting Detective Jenkins to Testify on the Issue of Defendant's Appearance at the Time of Arrest.

B. The Trial Court Erred in Denying Defendant's Motion For a Mistrial.

C. Detective Jenkins' Hearsay Testimony Impermissibly Bolstered the Victim's Testimony (Not Raised Below).

III.  THE TRIAL COURT ERRONEOUSLY ISSUED CONCURRENT SEN-
TENCES ON COUNTS THAT SHOULD HAVE BEEN MERGED.
IV.  THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT.
V.  THE PROSECUTOR'S CLOSING REMARKS WERE PREJUDICIAL AND
CONSTITUTE REVERSIBLE ERROR.

   A.  During Summation the Prosecutor Improperly Bolstered the Credibility
of Detective Jenkins.

   B.  The Prosecutor's Comments on the Paucity of Evidence in the State's
Case Were Unfairly Suggestive and Prejudicial.

With the exception of Point I, we conclude that defendant's arguments are all clearly without merit. *R.* 2:11–3(e)(2). Point I, however, requires reversal of the convictions and a remand for retrial.

Defendant and his sister both testified that, on the evening in question, they were together with the sister's husband, first at home and later out to dinner. In cross-examination of the sister, the State established that she had never come forward to the police or the prosecutor's office to support defendant's innocence by revealing that she was with defendant at the relevant time. In summation, the State argued that the jury should consider that the sister did not come in to tell the police her story. Defendant asked the judge to charge the jury that the sister had no obligation to go to the police with her information. The judge agreed to so charge, but failed to do so. The defense did not call the omission to his attention.

Defendant argues that it is improper to discredit an alibi witness for failure to come forward to the authorities with exculpatory information, and that it is certainly improper to discredit an alibi witness for failure to volunteer exculpatory information after defendant files an alibi notice containing the witness's name and address.[1] Here defendant filed a notice of

---

[1] These questions are different from constitutional issues arising out of the State's effort to discredit a defendant's late assertion of an alibi or to inquire of a defendant at trial into the contents of an alibi bill of particulars. *See State v. Irving,* 114 *N.J.* 427, 555 *A.2d* 575 (1989); *State v. Aceta,* 223 *N.J.Super.* 21, 537 *A.2d* 1317 (App.Div.1988).

alibi close to five months after his arrest, and close to one year before trial.

Defendant's argument encounters *State v. Plowden*, 126 *N.J.Super.* 228, 313 *A.*2d 802 (App.Div.), *certif. denied*, 64 *N.J.* 504, 317 *A.*2d 717 (1974). Defendant there unsuccessfully argued the same position taken by defendant here, except that no alibi notice was involved in *Plowden*. In that case, defendant's sister, an alibi witness, was questioned over objection about her failure to go to the police with her story. Defendant argued that she was under no obligation to do so. The Appellate Division said:

> We disagree. Mrs. Johnson's failure to tell the police soon after her brother's arrest that he had been with her when the murder for which he was arrested had been committed was inconsistent with what one could reasonably expect she would have done had defendant been in her apartment when the shootings occurred. [126 *N.J.Super.* at 230, 313 *A.*2d 802].

The gist of *Plowden* is that a person with truthful alibi evidence would naturally go to the authorities with it. Failure to do so thus throws doubt on the witness's alibi testimony.

The contrary argument is that it is not reasonable to expect every truthful alibi witness to run to the police. She may have been advised not to do so by counsel. Based on her own experience or stories circulating in her community, she may distrust the police, or expect them not to take her story seriously. She may not have been aware of the criminal charges or their gravity. She may not have appreciated the exculpatory nature of her information, or may not have been familiar with the means to make it available to law enforcement authorities.

An alibi witness's reasons not to go to the police may not be readily understood by many jurors. They may not think that telling the lawyer is as worthy as telling the police. They may not be sympathetic to the distrust of some law-abiding people of officialdom generally, or of law enforcement in particular. The problem is whether jurors are equipped to evaluate how much a

witness's failure to go to the police should count against her credibility.

One approach to the problem is represented by *State v. Plowden, supra.* It is based on the belief that an alibi witness's silence is "inconsistent with what one could reasonably expect" from someone with truthful information that clears a family member. *State v. Plowden,* 126 *N.J.Super.* at 230, 313 *A.*2d 802. The *Plowden* rule is also represented by *Salisbury v. State,* 222 *Ga.* 549, 150 *S.E.*2d 819 (1966), and *People v. Ortiz,* 207 *Ill.App.*3d 1, 151 *Ill.Dec.* 957, 962, 565 *N.E.*2d 228, 233 (1990). Treating the matter as discretionary, without stating the standards for the exercise of discretion, are *State v. Lankford,* 31 *N.C.App.* 13, 228 *S.E.*2d 641 (1976); *State v. Windhorst,* 635 *S.W.*2d 706 (Tenn.Crim.App.1982); *Holtzclaw v. State,* 451 *S.W.*2d 505 (Tex.Crim.App.1970). *See also McLemore v. State,* 87 *Wis.*2d 739, 275 *N.W.*2d 692 (1979). Under the *Plowden* rule, the witness presumably has the opportunity to explain her silence in an effort to avoid or minimize its negative impact. The shortcoming of the *Plowden* rule is that it affords no focused means of excluding cases in which a witness's pretrial silence should not fairly discredit her, because there are valid reasons not readily apparent to jurors.

Another approach would be to outlaw all cross-examination and summation discrediting the initially silent alibi witness. That would be an *Evid. R.* 4 decision based on the belief that the relevance of the witness's initial silence is substantially outweighed by its capacity to mislead or distract the jury. We know of no jurisdiction that has adopted this solution.[2] Its

---

[2]In 1972, The United States Court of Appeals for the District of Columbia Circuit ruled that no reasonable inference can be drawn from an alibi witness's failure to contact the police. *United States v. Young,* 463 *F.*2d 934, 938 (D.C.Cir.1972). That rule has not been followed elsewhere, and *Young* has not been cited in that Circuit or in any other jurisdiction for this proposition since 1979.

weakness is that it bars jury consideration of those cases in which pretrial silence is truly and legitimately significant.

We choose a third approach, one pioneered by Massachusetts and New York, and adopted in Michigan as well. It is to permit cross-examination of alibi witnesses about their pretrial silence, but only after the State demonstrates the existence of circumstances that legitimate the inquiry. Thus, the New York Court of Appeals requires the State to

lay a "proper foundation" for this type of cross-examination by first demonstrating that the witness was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities.

*People v. Dawson*, 50 *N.Y.*2d 311, 321 n. 4, 406 *N.E.*2d 771, 777, 428 *N.Y.S.*2d 914, 921 (1980). There may, the Court said, be explanations for the witness's prior silence, such as mistrust of officialdom, or a sense of the futility of the effort. The existence of such possible explanations would not justify *per se* exclusion, because jurors can be expected to discern and evaluate the explanations made by the witness in response to the cross-examination or redirect examination. *Id.* at 321–22, 406 *N.E.*2d at 777–78, 428 *N.Y.S.*2d at 921. The determination of whether the prosecution has laid the "proper foundation" is a matter for the trial judge's discretion. If the questions are allowed, the judge should, on request, instruct the jurors that the witness had no civic or moral obligation to come forward and volunteer exculpatory information to law enforcement authorities, and that they may consider the witness's prior silence only insofar as it casts doubt on the witness's testimony by reason of its apparent inconsistency. *Id.* at 322–23, 406 *N.E.*2d at 778, 428 *N.Y.S.*2d at 922. Finally, the *Dawson* court ruled that such cross-examination would be improper if the witness's silence resulted from the advice of defense counsel. *Id.* Three of the seven judges of the Court of Appeals joined in a concurring opinion to emphasize the dangers of the disputed

cross-examination, and the need to carefully observe the restrictions set by the majority opinion.

Massachusetts follows the same rule. In *Commonwealth v. Gregory*, 401 *Mass.* 437, 517 *N.E.*2d 454 (1988), the Supreme Judicial Court ruled that before the prosecution could question an alibi witness on pretrial silence, it had to establish that the witness knew of the pending charges in sufficient detail to realize that she possessed exculpatory information, that the witness had reason to make the information available, that she was familiar with the means of reporting it to the proper authorities, and that the defendant or his attorney did not ask the witness to refrain from doing so. *Id.* at 444–45, 517 *N.E.*2d at 459. In *Gregory*, the witness said she did not come forward because she believed no one would listen to her. This, the Court said, was for the jury to believe or disbelieve. *Id.* at 445, 517 *N.E.*2d at 459.

Michigan also allows such cross-examination after a foundation is laid on the record, showing why it would be natural for the alibi witness to relate his story to the police. *People v. Fuqua*, 146 *Mich.App.* 250, 379 *N.W.*2d 442, 445, *leave to appeal denied*, 424 *Mich.* 863 (1985).

The New York–Massachusetts rule recommends itself to us because it gives the trial judge a structured discretionary authority to make a liminal inquiry and to exclude pretrial silence as discrediting evidence unless the prosecution first demonstrates the existence of factors that legitimate its consideration. We therefore hold that the prosecution may cross-examine an alibi witness on the subject of pretrial silence (and may comment in summation), but only after demonstrating to the trial judge's satisfaction that the witness was aware of the nature of the charges pending against the defendant, had reason to know he had exculpatory information, had a reasonable motive to act to exonerate the defendant, was familiar with the means to make the information available to law enforcement authorities, and was not silent as the result of the advice

of defense counsel.[3]

█ In order to ensure that the jury is not misled by information revealed during an unsuccessful effort by the State to lay a proper foundation, it may be appropriate in some cases to order a *voir dire* hearing to ascertain if the proper foundation exists. *See Commonwealth v. Nickerson*, 386 *Mass.* 54, 62, 434 *N.E.*2d 992, 997 (1982); *Commonwealth v. Brown*, 11 *Mass.App.* 288, 297, 416 *N.E.*2d 218, 224–25 (1981).

An alibi witness should have the opportunity to explain pretrial silence. We must trust jurors to fairly consider whether the explanation diminishes the discrediting effect of silence, by refuting the assumption that silence is unnatural if the witness has truthful exculpatory information. Fair consideration of the explanation may not come easy to jurors of limited life experience, but their oath obliges them to try.

█ If the proper foundation is laid, and the witness's pretrial silence is revealed to the jury, the trial judge should, on request, charge that the witness had no civic or moral obligation to come forward with exculpatory information, and that his silence is to be considered only insofar as it casts doubt on the witness's testimony by reason of its apparent inconsistency.

One further matter of significance, not mentioned in the opinions of other courts, is the matter of the alibi notice contemplated by our rules of court. *R.* 3:11–1 requires a defendant who intends to rely on an alibi to furnish, on demand, a bill of particulars signed by defendant stating where he was at the time of the offense and the names and addresses of any witnesses on whom he intends to rely to say he was there. Failure to furnish the required information can result in exclu-

---

[3]Counsel may request a person other than a client not to volunteer information to another party if the person is a relative, employee or other agent of a client, and counsel reasonably believes the person's interests will not be adversely affected by refraining from giving the information. *RPC* 3.4(f).

sion of alibi witnesses' testimony, or other appropriate order. *R.* 3:11–2.

█ The date that a defendant furnishes an alibi bill of particulars containing the witness's name and address fairly terminates any arguable unnaturalness of an alibi witness's failure to come forward with his information. Here, defendant's alibi notice was furnished a year before trial. It included his sister's name and address. The State failed to interview defendant's sister or make other inquiry until just before she testified. It is not fair to discredit her testimony for her failure to pursue police or prosecutors during that year. Thus, we hold that the prosecution may not question or comment on an alibi witness's pretrial silence during any period after filing of defendant's alibi notice containing the witness's name and address.

█ In the present case, the prosecution's questions and comments on defendant's sister's pretrial silence were not limited to the months between arrest and alibi notice. They also covered the year between the notice and the trial. Although the defense pointed out the existence of the alibi notice, there was nothing before the jurors to inform them what an alibi notice was and what significance it had in relation to the witness's silence. Moreover, no effort was made by the prosecutor to lay the foundation we have held necessary. Defendant asked for an instruction to the jury that an alibi witness has no obligation "to come forward." The judge agreed, but then omitted the required charge. Defendant did not object.

This was an identification case. Two victims of offenses committed within a brief period of time separately picked defendant's picture out of photo arrays. Although that is lots better than a single photo identification, the State's identification evidence was not of sufficient overwhelming force to permit the fair conclusion that the errors regarding the alibi

testimony were harmless. They may well have had a role in the jury's decision.

Reversed, and remanded for further proceedings.

A.M. STEIN, J.A.D., concurring.

We reverse and remand this case for a new trial because we reject the unyielding holding in *State v. Plowden*, 126 *N.J.Super.* 228, 313 *A.*2d 802 (App.Div.1974), *certif. denied,* 64 *N.J.* 504, 317 *A.*2d 717 (1974), that the failure of a sister to provide an alibi to police soon after her brother's arrest "was inconsistent with what one could reasonably expect she would have done" had defendant been in her apartment at the time of the murder with which he was charged. 126 *N.J.Super.* at 230, 313 *A.*2d 802.

It would be unrealistic to expect Jose Silva's sister to run to the police or prosecutorial authorities with an alibi for her brother. It would be just as unrealistic to expect many, if not most other citizens, regardless of business, social or economic status, to turn first to the police with such information about a close relative or close friend.

The person to whom such alibi information would likely be first reported would not be a law enforcement authority figure. It would be the suspect's lawyer. The legitimate inquiry by the prosecutor on cross-examination (out of the jury's presence under *Evid.R.* 8) is not, "Why didn't you come to us with the information?" It is: "To whom and when did you first report this information?" If prompt disclosure was made to defendant's lawyer, then this line of questioning should be prohibited in the jury's presence. If the report came long after the witness knew that the defendant had been accused, it would be proper for the prosecutor to inquire why no information about the alibi was given to the lawyer, to the police, or to anyone in a position of authority or responsibility.

What the majority has given with one hand, it has taken away with the other. If the purpose of this reversal is to

afford fundamental fairness to this defendant and others similarly situated, we have wasted a lot of unnecessary time and trouble, only to come up with an illusory remedy.

The majority holds

that the prosecution may cross-examine an alibi witness on the subject of pretrial silence (and may comment in summation), but only after demonstrating to the trial judge's satisfaction that the witness was aware of the nature of the charges pending against the defendant, had reason to know he had exculpatory information, had a reasonable motive to act to exonerate the defendant, was familiar with the means to make the information available to law enforcement authorities, and was not silent as the result of the advice of defense counsel. [Op. at 630, 600 *A*.2d at 510] [1]

This ruling follows similar holdings in New York, Massachusetts and Michigan. *People v. Dawson,* 50 *N.Y.*2d 311, 321, 406 *N.E.*2d 771, 777, 428 *N.Y.S.*2d 914, 921 n. 4 (1980); *Commonwealth v. Gregory,* 401 *Mass.* 437, 445, 517 *N.E.*2d 454, 459 (1988); *People v. Lewis,* 162 *Mich.App.* 558, 567, 413 *N.W.*2d 48, 52–53 (1987), *vacated and remanded on other grounds,* 430 *Mich.* 874, 422 *N.W.*2d 685 (1988).

It would be most unusual for even the most minimally competent prosecutor to be unable to get the alibi witness to admit that he or she knew that defendant was in trouble with the law, had reason to believe that he or she could provide exculpatory information, would be normally motivated to exonerate defendant, and knew how to get such information into the hands of the police.

Also, I cannot conceive that any intelligent defense counsel would request a jury charge that "a witness has no civil or moral obligation to come forward with exculpatory information" but that such silence "is to be considered ... insofar as it casts doubt upon [his] testimony by reason of its apparent inconsistency." Op. at 630, 600 *A*.2d at 510. In other words, although the witness had no duty to volunteer, the failure to

---

[1]The majority recognizes that in most instances *RPC* 3.4(f) prevents a lawyer from telling a person other than a client not to volunteer information to another party. [Op. at 630, n. 3, 600 *A*.2d at 510, n. 3].

come forward unbidden can be used against the witness in concluding whether he or she is to be believed.

In only the rarest of circumstances should jurors be permitted to hear that a witness did not report an alibi because of distrust of the police or, even worse, because the distrust arose from unpleasant dealings between the witness and the police. Such responses would lead to a collateral march on credibility by an inquisitive prosecutor, an inquisition likely to put the alibi witness on trial, rather than focusing upon defendant's guilt or innocence. It is not enough that the trial judge has discretion to exclude such highly prejudicial and extremely time-consuming matters under *Evid.R.* 4. This line of questioning by the prosecutor as to why the witness distrusts the police is so highly prejudicial that it should not be permitted.

We require too much of jurors when we oblige them to "fairly consider whether the witness's explanation [for pretrial silence] diminishes the discrediting effect of that silence" (slip op. at 9–10). These conscientious, law-abiding citizens would not likely be disposed to look objectively at the testimony of a person who distrusts the police, whatever the reason for that distrust.

It is not "inconsistent with what one could reasonably expect" (*State v. Plowden, supra,* 126 *N.J.Super.* at 230, 313 *A.*2d 802) or "unnatural" (Op. at 630, 600 *A.*2d at 510) for a sister not to immediately run to the police with evidence which might exonerate her brother. It is consistent and natural for her to take the information to someone whom she believes would more likely help her brother, such as her brother's lawyer. *Plowden* and this case impose a legal requirement rather than create an inference that people are expected to immediately go to the police with exculpatory information. If that is so, then we should not pretend that human experience mandates such an "inference." And we should not tell jurors that a witness has no civil or moral obligation to come forward with exculpatory information.

My conclusions in this opinion are not inconsistent with those in my concurring opinion in *State v. Aceta,* 223 *N.J.Super.* 21, 32–34, 537 *A.*2d 1317 (App.Div.1988) (Stein, J.S.C., t/a, concurring), where I stated that the State should be permitted to cross-examine a defendant as to the reasons why he gave a late notice of alibi long after the period required by *R.* 3:11–1. *See, also, State v. Irving,* 114 *N.J.* 427, 437–440, 555 *A.*2d 575 (1989).