IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



**FILED**

**June 30, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| ROY L. SHERROD, | ) | |
| | ) | |
| Appellant, | ) | No. 02C01-9806-CR-00164 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable James C. Beasley, Jr., Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-Conviction) |
| | ) | |
| Appellee. | ) | |

For the Appellant:

Jeffery Gladstein
200 Jefferson Ave., Suite 1313
Memphis, TN 38103

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Patricia C. Kussmann
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
        and
Paula Wulff
Assistant District Attorney General
201 Poplar Avenue, 3rd Floor
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, Roy L. Sherrod, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief. He seeks relief from his jury convictions for aggravated rape and robbery. This court affirmed these convictions and his forty-year sentence in the Department of Correction as a Range III, persistent offender, for aggravated rape but modified the consecutive robbery sentence to fourteen years as a Range III offender. State v. Roy L. Sherrod, No. 02C01-9510-CR-00331, Shelby County (Tenn. Crim. App. July 26, 1996). The petitioner contends that he received the ineffective assistance of counsel at trial and on direct appeal because counsel:

> (1) failed to object to the expert testimony of a witness for the state;
>
> (2) failed to object to improper remarks made by the state during closing argument;
>
> (3) failed to object to a jury instruction on reasonable doubt which included the phrase "to a moral certainty;" and
>
> (4) failed to interview a potential witness.

We affirm the trial court's denial of post-conviction relief.

At the evidentiary hearing, the petitioner testified that his trial attorneys were ineffective for failing to object when the trial court instructed the jury that a nurse called by the state was an expert witness. He said that during her testimony, the nurse admitted that she was not an expert when she said that she was working on her sexual assault nurse evaluation certification. Reading from his petition, the petitioner said that the nurse testified that she was not qualified to say or could not say whether the injuries suffered by the victim could be consistent with anal penetration occurring quickly and without lubrication. He said that he thought that this statement meant that she was not qualified to testify about sexual assault. The petitioner stated that trial counsel were

2

ineffective for not objecting to the nurse's qualification as an expert and for not preserving and raising this issue on direct appeal.

The petitioner testified that his attorneys were ineffective for not objecting to improper statements in the state's closing argument. He said that the prosecutor argued that the petitioner raped the victim and that the petitioner's claim that the victim was a prostitute was not true. The petitioner stated that the prosecutor also improperly commented upon his silence at the time of his arrest. He said that the prosecutor argued that the petitioner did not tell the police that he had consensual sex with the victim when they first confronted him, that this was inconsistent, and that this showed that he was lying to the jury. The petitioner said that these statements affected the jury's deliberations regarding his defense of consent.

The petitioner testified that his attorneys were ineffective for not objecting to the trial court instructing the jury that reasonable doubt requires a moral certainty of guilt. He admitted that the Tennessee Supreme Court had upheld this instruction, but he said that federal courts have held it to be unconstitutional.

The petitioner testified that he was not satisfied with his attorneys' investigation of his case. He said that they did not properly investigate because they did not interview his brother. He said that he was coming from his brother's house when the victim approached him. He stated that he gave one of his attorneys his brother's name, address and telephone number, but she was not able to reach his brother by telephone, and she never went to his brother's house. He stated that his brother would have testified that on the night of the offense, the petitioner was at his house and left to go to their mother's house. On cross-examination, the petitioner admitted that having his brother testify that the petitioner was at his house before the

3

incident would not have changed his theory of defense that he and the victim had consensual sex.

The petitioner's lead attorney testified that she had been employed by the Shelby County Public Defender's Office for seven years. She said that she had been with the Public Defender's Office for nine months to one year at the time she represented the petitioner. She said that although she had worked on a few rape cases before she represented the petitioner, his case was her first trial. She said that another public defender assisted her with the petitioner's case.

The lead attorney testified that the nurse, who testified for the state, had said that she had performed thousands of rape crisis examinations. She said that she thought that the nurse was qualified and that the trial court had already limited the nurse's testimony to only what she had seen or done. She said that she saw no basis for objecting to the nurse's testimony. She said that she could not remember the state asking the trial court to declare the nurse an expert, but she did not recall this being an issue. She said she thought that the trial court would have deemed the nurse to be an expert.

The attorney testified that she also had no basis for objecting during the state's closing argument because the prosecutor was arguing, not testifying. She agreed that during the trial, police officers had recounted that when they first questioned the petitioner, he said that he was walking home from work but after they arrested him, he told them that the victim engaged in consensual sex with him for money. She said that she had objected to these statements as inadmissible hearsay, but the trial court allowed the statements into evidence. She stated that she saw no basis for objecting to the prosecutor's argument about the petitioner's initial statement.

4

She said that the trial court gave the standard instruction on reasonable doubt and that she did not think that this instruction was unconstitutional.

The attorney testified that the petitioner gave her the names of several witnesses to interview, including his brother. She said that her investigator tried to contact the petitioner's brother but was not able to locate him. She said that nothing the petitioner told her led her to believe that his brother could have provided an alibi and that their theory of defense was that the petitioner and the victim had consensual sex. She said that the brother's testimony that the petitioner had left the brother's house would have had no bearing on the theory of defense.

The attorney testified that she encouraged the petitioner to accept the state's offer of a nine-year sentence, especially in light of the petitioner's two prior rape convictions, but the petitioner wanted to go to trial. She said that she checked the victim's records and found no arrests or convictions for prostitution. She stated that they interviewed the victim, the victim's boyfriend, and the victim's mother, but they found no evidence or witnesses to show that the victim was a prostitute or a drug addict. She said that although she was not able to verify that the victim was a prostitute, she questioned the victim at trial about accepting money for sex. She said that she tried to persuade the petitioner to testify at trial because they had no other evidence that the victim was a prostitute. She said that the few prior convictions that the state could have used to impeach the petitioner would have had little impact but that he refused to testify.

On cross-examination, she testified that she did not recall whether she had reminded the jury that the closing arguments were not proof. She said that she did not believe that she could have done anything that would have changed the outcome of the trial.

Co-counsel testified that he formerly worked for the Shelby County Public Defender's Office for almost nine years. He said that he assisted with the petitioner's case but that he was not involved with the pretrial investigation. He said that at trial, the state's nurse testified that she had examined hundreds, if not thousands, of rape victims and that she only testified to what she observed and the procedures that she followed. He said that she did not testify about what caused the injury to the victim's rectum. He said that she testified within the limits set by the trial court and that he believed her to be an expert on the evidence she gave. He said that he saw no basis for objecting to her testimony.

Co-counsel testified that he saw no basis for objecting to the state's closing argument. He said that he believed the prosecutor was stating the evidence given by the witnesses at trial. He said that the trial court gave the standard instruction on reasonable doubt and that the Tennessee Supreme Court had approved the constitutionality of this instruction. He said that he did not think that the petitioner's brother could have aided their theory of consent. He said that they investigated whether the victim was a prostitute. He said he felt that lead counsel's work on the petitioner's case was excellent.

Karen Cook testified that she worked for the District Attorney General's Office and that she represented the state pretrial in the petitioner's case. She said that the defense team had open-file discovery in this case and that lead counsel responded to her Motion for Notice of Alibi that the petitioner had none. She said that she had investigated the possibility that the victim was a prostitute while preparing for negotiations in the case but that she had found nothing to substantiate this claim.

The trial court denied the petition for post-conviction relief and made the following detailed factual findings:

6

The Transcript of the trial shows that the [nurse] was properly qualified as an expert and allowed to testify as same. . . . . This Court finds that the witness was "in fact" an expert and that the complaint is without merit, therefore the fact that his [attorneys] did not object to her expertise does not render them ineffective.

. . . . [The portion of the state's closing] argument in question dealt with the fact that the petitioner's defense was that he had consensual sex with the victim for money, and yet at the time of his arrest instead of telling the police that[,] he said he had just got off from work and had been to his brother's house drinking. . . . . [U]nder the circumstances of the proof in this case . . . the argument made by the state was proper and that there was no basis for an objection by petitioner's attorneys. . . . .

. . . . Our Supreme Court has upheld the [reasonable doubt] jury instruction given and therefore this issue has no merit.

Finally, the petitioner claims his attorneys were ineffective because they failed to properly investigate his case. . . . . The only witness not interviewed was the petitioner's brother who could not be located and whose testimony would not have affected the outcome of the trial.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel. Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied, as well, to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn.), cert. denied, 493 U.S. 874 (1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court stated that attorneys should be held to the general standard of whether the services

rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (counsel's conduct will not be measured by "20-20 hindsight"). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

Also, we note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

## A. EXPERT WITNESS

The petitioner contends that his attorneys' performance was deficient because they failed to object to the expert testimony of the nurse, who was never declared to be an expert witness by the trial court before the jury. The petitioner argues that the failure to object resulted in the witness presenting prejudicial evidence to the jury. The state contends that the petitioner was not prejudiced because the trial court found the witness to be qualified to present her expert testimony and that if the

8

petitioner's attorney had objected, the trial court would have immediately declared her

an expert and corrected this "oversight." We agree.

> Rule 702, Tenn. R. Evid., states:
>
> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

The petitioner concedes that the nurse had the qualifications to testify as an expert.

He has presented no evidence that, had his attorneys objected to the state's failure to

have the trial court declare the nurse an expert, the result would have been anything

other than such a declaration. Because the nurse would have been permitted to testify

as an expert even if the petitioner's attorneys had made the objection, the petitioner has

suffered no prejudice by their failure to object.

## B. IMPROPER CLOSING ARGUMENT

The petitioner contends that he received the ineffective assistance of

counsel because his attorneys failed to object to improper remarks made by the

prosecutor during the state's closing argument. The state argues that the petitioner's

attorneys properly made no objection to the prosecutor's remarks because the

prosecutor merely pointed out the inconsistencies in the petitioner's statements to the

police and did not misstate the facts. We agree.

Initially, we note that the record does not include a transcript of the state's

closing argument. Portions of the petition for post-conviction relief were read into

evidence at the evidentiary hearing, including a quotation of the allegedly improper

remarks:

> [Prosecutor]: Ladies and gentlemen, the defendant raped the victim, . . . . He not only did it once, he did it twice. He did it anally and vaginally. Now, the defendant would have you all believe that she was a prostitute and that's why she was

9

> walking down the street. Ladies and gentlemen, that is not true. . . . .
>
> And did he tell the police that the first time he was confronted? No. Think about that. That's inconsistent. That [shows] the lie that he is trying to perpetrate on you right now.
>
> Why [did he not] say that the first time? Why didn't he say that very evening, Officer, I'm astounded that [you're arresting] me for this.

The trial court found that the prosecutor was referring to the petitioner first telling the police that he had just left work and had been at his brother's house drinking rather than telling them that he had consensual sex with the victim for money.

A prosecutor may properly base his or her argument upon inferences supported by evidence in the record, including argument pertaining to the veracity of a witness's testimony. See State v. Brown, 836 S.W.2d 530, 552 (Tenn. 1992); State v. Beasley, 536 S.W.2d 328, 330 (Tenn. 1976). A prosecutor may even comment upon the defendant's veracity when the comment is supported by evidence in the record. State v. West, 767 S.W.2d 387, 394 (Tenn. 1989); see also Beasley, 536 S.W.2d at 330. Although a prosecutor is prohibited from expressing a personal opinion on a witness's credibility, he or she may argue based upon an analysis of the evidence and the conclusion supported by the evidence. Id. In this case, the prosecutor was merely commenting upon evidence in the record. The petitioner's lead attorney testified at the evidentiary hearing that the defense team was not able to present any evidence that the victim was a prostitute. She testified, and the trial court's own analysis of the transcript confirmed, that the petitioner's statements to the police were inconsistent.

The petitioner characterizes the prosecutor's remarks as a comment upon his silence to the police. When a defendant does not testify at trial, a prosecutor may not comment upon a defendant's failure to make a statement to the police because this would punish the defendant for exercising his or her constitutional right to remain silent. Braden v. State, 534 S.W.2d 657, 659-60 (Tenn. 1976) (noting further

that a defendant's pretrial silence may be admitted with caution when inconsistent with a defendant's testimony). Here, the prosecutor did not comment upon the defendant's failure to make a statement to the police. Instead, the prosecutor commented upon the inaccuracy of the statement that the petitioner made to the police.

Because the prosecutor's remarks were proper, the petitioner's attorneys were not ineffective for not objecting to them. The petitioner argues that his attorneys should have objected even if they had no legal basis in order to remind the jury that the prosecutor's remarks were argument, not evidence. The attorneys' choice not to make the baseless objection suggested by the petitioner was a tactical decision which this court will not second guess. See Hellard, 629 S.W.2d at 9.

## C. JURY INSTRUCTION

The petitioner summarily argues that counsel were ineffective for failing to object to the trial court's reasonable doubt jury instruction which contained the phrase "to a moral certainty." The petitioner concedes in the petition that the Tennessee Supreme Court has upheld an identical instruction. See State v. Nichols, 877 S.W.2d 722, 734 (Tenn. 1994). His attorneys' decision not to object was within the range of competence required of attorneys in criminal cases.

## D. INADEQUATE INVESTIGATION

The petitioner contends that his attorneys were ineffective in their investigation of his case because they did not interview his brother. The petitioner's brother did not testify at the evidentiary hearing. In order for a petitioner to establish prejudice from his attorney's failure to locate a witness, the petitioner must have this witness testify at the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would

11

have revealed a witness or what that witness' testimony might have been if introduced by defense counsel." Id. at 757. The petitioner has failed to prove how he was prejudiced by his attorneys' inability to locate this witness.

In consideration of the foregoing and the record as a whole, we hold that the petitioner received the effective assistance of counsel and we affirm the denial of post-conviction relief.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Gary R. Wade, Presiding Judge

_____
Thomas T. Woodall, Judge